## Chicago Life Insurance Company v. Robertson.

(Decided June 3, 1915.)

### Appeal from Jefferson Circuit Court (Chancery Branch, No. 2).

1. Insurance—Insurance Agent—Right of Agent to Recover Commissions Where Fault of Principal Prevented Consummation of Negotiations.—An insurance company, having employed an agent to solicit applications for life insurance and authorized him to agree that there should accompany such insurance contract as he might designate "an agency contract," the same being an arrangement whereby the policy holder would receive a compensation for furnishing information concerning agents and applicants for insurance, thereby enabling him to reduce the amount of his premiums, is liable to such agent for the commissions which he would have received, but for the failure of the company to accompany the policies of insurance with the "agency contract" and but for the fact that after the policies were issued and before their delivery, the company transferred its assets to another insurance company, which conditions resulted in the rejection of the policies by the applicants.

2. Insurance—Right of Applicant to Reject Policy Tendered When Company Transfers its Assets to Another.—One who applies for insurance in a certain company cannot be compelled to accept a policy in another company or in the company to which he applied when it transfers its assets pending the delivery of the policy.

3. Evidence—Parol Evidence Affecting Writings.—The rule rejecting parol evidence when the parties to a contract have merged their negotiations into a writing does not apply unless it appears that the parties intended that the writing should embody their whole agreement and understanding.

BASKIN, DUFFIN, KINKEAD, SAPINSKY & DUFFIN for appellant.

HENRY BURNETT for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

On July 28, 1906, the Chicago Life Insurance Company and Lloyd W. Robertson entered into a contract empowering the latter to solicit applications for life insurance, and fixing his compensation therefor.

Acting under this contract, Robertson procured a number of applications for insurance, principally from residents of Georgia, and collected the first premium thereon, which premiums he held pending the acceptance of the applications and issual and delivery of the policies.

These applications for insurance were forwarded to the insurance company, and policies or contracts of insurance for each of such applicants were issued by the company and sent to Robertson for delivery.

In the meantime, and before said policies had been received by Robertson, the Chicago Life Insurance Company had transferred and sold its business, assets and contracts, including those above mentioned, to the Federal Life Insurance Company.

When Robertson came to make delivery of the policies to the respective applicants, they refused to accept same; first, because of the transfer of its business, made by the Chicago Life Insurance Company; and, second, because the policies were unaccompanied by an "agency contract," for which they had applied in connection with the insurance contract.

This "agency contract" was one whereby the person to whom it was issued agreed to aid in extending the business of the insurance company, to furnish on written request reports as to the desirability of agents and ap-

plicants for agencies, to furnish information regarding the personal habits of applicants for insurance, and such information as might protect the company from the assertion and enforcement of fraudulent claims; in consideration of which the company upon its part agreed to pay to such "agency contract" holders a certain compensation. The services to be performed under such contract were in fact negligible, but the sums promised by way of compensation would serve to reduce the amount of annual premiums necessary to be paid, and was, of course, an inducement to the taking of insurance in the company issuing such so-called "agency contract."

Upon the refusal of the applicants to accept the policies issued upon their applications, and this demand therefor, Robertson returned to the respective applicants the money which had been paid by them into his hands as the first premium thereon.

Robertson then sued the insurance company in the Jefferson Circuit Court for the commissions which he would have earned had the policies been accepted. A default judgment was had in his favor, whereupon the company sought a new trial. This being denied in the court below, it prosecuted an appeal to this court, which resulted in the granting of a new trial. See Chicago Life Insurance Company v. Robertson, 147 Ky., 61. Upon the return of the case, the plaintiff gave his deposition after the issues were made up, this being the only evidence taken; and upon submission, the chancellor rendered a judgment in plaintiff's favor in the sum of $2,367.73, from which the defendant insurance company appeals.

The contract between Robertson and the insurance company provided that he should receive his commissions on first year premiums as the same were paid in cash to the company. The premiums in question were not paid over to the company by Robertson, but were held by him pending the issual and delivery of the policies, and by him returned to said applicants, and for this reason appellant argues that appellee is not entitled to receive commissions thereon.

However, notwithstanding the fact that the company did not receive the first year premiums, if its failure so to do was occasioned by its own fault and not by that of the appellee, he would be entitled to his commissions.

This is conceded by appellant; but appellant contends that the applicants for insurance had no right to reject the policies of insurance, and that appellee was not justified in returning to them the money placed in his hands to pay the first year premiums thereon.

It appears that each applicant signed an application for an insurance policy and also an application for an "agency contract," these being separate and distinct writings containing no reference the one to the other; that the agreement made by Robertson with each applicant that an "agency contract" should accompany the insurance policy was in parol; and appellant contends that he had no authority to make such an agreement and that such agreement is excluded by the writings themselves; and that, therefore, the company had the right to refuse to issue the "agency contract" and to require the applicant to accept the insurance policy.

But the uncontroverted proof shows that Robertson did have authority from appellant to agree that an "agency contract" should accompany the insurance contract; and having such authority, the company was bound by his agreement.

But it is contended by appellant that as the writings themselves are each separate and complete and neither contains any reference to the other, and that as the application for insurance specifically excludes agreements other than such as are contained in the writing, the doctrine of the merger of negotiations in written instruments applies to exclude the promise of Robertson that an "agency contract" should accompany the insurance contract. But this doctrine has its limitations, and we think a proper application thereof would not preclude the consideration of parol testimony to show the dependence of these contemporaneous writings.

The state of fact presented is exactly this. An agent possessed of authority to agree that an "agency contract" should accompany the insurance contract, makes such agreement with the applicant for insurance, as an inducement to the latter to take out insurance, the inducement being that the compensation derived from the "agency contract" would serve to reduce the premiums on the insurance contract. The applicant then signs an application for insurance which makes no mention of the promise to accompany the policy with an "agency contract," and also signs an application for an "agency

contract'' which contains no reference to the application for insurance. Appellant contends that parol evidence showing that the application for insurance was conditioned on the issual of an ''agency contract'' is incompetent under the parol evidence rule. But to render this rule applicable, it must appear. that the parties intended that the application for insurance should embody their whole agreement or understanding. Elliott on Contracts, Sec. 1629. And such intention does not here appear.

Moreover, conceding that such evidence should be excluded, still in an action by the applicant against the company to recover the premium (had Robertson paid same over to the company), with both Robertson and the applicant testifying that the application for insurance was conditioned on the issual of an ''agency contract,'' it would have been a very easy matter to reform the application and cause to be inserted therein the stipulation to that effect. It is manifest that the insurance company could not have enforced the acceptance by the applicant of the policy of insurance without at the same time tendering the ''agency contract'' so promised by Robertson under the authority possessed by him.

This being true, we fail to see how the appellant company was prejudiced by, or how it can complain of, the action of appellee in restoring to the applicants the money placed by them in his hands in payment of the first year's premiums.

As to the second ground upon which the applicants based their rejection of the policies tendered—that is, the transfer by appellant company of its business to the Federal Life Insurance Company—we think that the fact that, after the policies were issued and before they were offered to be delivered to the applicants, such transfer was made, was sufficient to constitute a non-performance of the undertaking of appellant company and to justify a rejection of the policies by the applicants.

It may be that the Federal Life Insurance Company was a stronger company than appellant, and that the transfer was beneficial rather than otherwise to the policy-holders; but these applicants sought policies in the Chicago Life Insurance Company, and when that company transferred its assets to one with which the applicants had no connection, such policies were its in name only.

It is not the indulgence of a violent assumption to say that persons who seek insurance contracts in a certain company do so upon a certain amount of faith in the reliability and solvency thereof, and they cannot, against their will, be compelled to accept as a compliance with their applications for insurance therein policies in another company or policies in the company to which they applied, when it transfers its assets pending the delivery of the policies, to another company unknown to them and with which they had no dealings and in which they perhaps repose no confidence. Lovell v. St. Louis Mutual Life Ins. Co., 111 U. S., 273.

By the refusal of appellant company to comply with and perform the agreements made by appellee on its behalf and under its authority, he was deprived of the commissions herein sought to be recovered and fairly earned; and the chancellor properly rendered a judgment in his favor, which is ordered to be and is affirmed.